IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| D. LANE BAUCOM, JR., <br><br> Plaintiff, <br><br> vs. <br><br> DoALL COMPANY, an Illinois corporation <br><br> Defendant. | Case No.: 3:17-CV-00242-MOC-DSC <br><br> **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO SET ASIDE ENTRY OF DEFAULT** |

Defendant, DoALL Company, an Illinois corporation ("DoALL"), by and through its undersigned counsel, submits this Memorandum in Support of its Motion to Set Aside Entry of Default.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

DoALL is a family-owned Illinois corporation that manufactures and distributes industrial sawing machines and related products. (Thomson Decl. ¶ 4). Founded in Minnesota in 1927, DoALL today maintains facilities across the United States and around the world. *Id*. In May, 2015, DoALL acquired East Metro Supply, Inc. ("East Metro"), a North Carolina corporation based in Monroe, NC. (Compl. ¶¶ 6-9). In connection with this acquisition, DoALL agreed to employ East Metro's owner, D. Lane Baucom ("Plaintiff"), as its Manager of Business Development for a term of five years. (Compl. ¶ 10). On or about December 5, 2016, Plaintiff was terminated from his position. (Compl. ¶ 45).

On or about May 5, 2017, Plaintiff filed a Complaint against DoALL alleging breach of contract and violations of the Family Medical Leave Act ("FMLA") and Employment

---

[1] Defendant's Motion to Set Aside Entry of Default, filed on June 14, 2017, is further supported by the Declaration of Charles Thomson (cited herein as "Thomson Decl. ¶ __") and attached hereto as <u>Exhibit 1</u>.

Retirement Income Security Act ("ERISA"). (Compl. ¶¶ 55-60, 61-67, 68-77). DoALL's General Counsel, Tim Moran, received this Complaint on May 8, 2017, and notified DoALL's Assistant General Counsel, Charles Thomson, via email the same day. (Thomson Decl. ¶ 9).

Due to ongoing changes to DoALL's corporate structure and attendant legal issues, heightened administrative burdens due to an almost 20% reduction of DoALL's personnel over the course of the preceding 12 months, and personal, family and health matters affecting both Mr. Moran and Mr. Thomson and requiring both of them to be out of the office frequently, Mr. Moran and Mr. Thomson experienced unfortunate miscommunication as to who was responsible for securing outside counsel to manage this matter. (Thomson Decl. ¶¶ 8-11). Mr. Thomson was first able to seek legal counsel for the matter on May 30, 2017. (Thomson Decl. ¶¶ 8-11). DoALL then unsuccessfully attempted to secure counsel—Mr. Thomson contacted multiple attorneys who either never returned his calls, or declined to take the case for various reasons. (Thomson Decl. ¶¶ 11-13). *Id*. On June 2, 2017, while DoALL was still seeking representation, Plaintiff requested, and was granted by the Clerk of Court, an Entry of Default. (Doc. No. 8); (Thomson Decl. ¶ 15). On June 8, 2017, DoALL successfully obtained its current undersigned counsel who immediately made a notice of appearance in the matter and made contact with Plaintiff's counsel to inform them of DoALL's intent to file this motion and seek Plaintiff's consent.[2] (Thomson Decl. ¶ 14). DoALL now moves to set aside this entry of default inaccordance with FRCP 55(c) so that Plaintiff's claims may be decided on the merits.

---

[2] On June 13, 2017, the undersigned counsel spoke via telephone with Plaintiff's Counsel David Guidry and inquired about Plaintiff's willingness to consent to set aside the Entry of Default. Following a robust discussion between counsel regarding the merits of Defendant's motion, Mr. Guidry stated that he was unable to provide consent at that time without discussing it with Plaintiff, but that he remained open to having further discussions about the case. In the interest of time, Defendant and the undersigned counsel thought it best to move forward with filing the instant motion and represent to the Court that Plaintiff had neither given nor withheld consent.

2

PPAB 3756956v1
Case 3:17-cv-00242-MOC-DSC   Document 13   Filed 06/14/17   Page 2 of 11

## LEGAL STANDARD

Rule 55(c) allows courts to set aside entries of default "for good cause." FRCP 55(c). This rule must be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). Moreover, "[a]ny doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson*, 411 F.2d at 130.

## ARGUMENT

Since all pertinent factors weigh in DoALL's favor, this Court should set aside the Clerk's Entry of Default. (Doc. No. 8). This Court follows the Fourth Circuit's six factor test for determining whether to set aside an entry of default, probing:

(1) whether the moving party has a meritorious defense;
(2) whether it acts with reasonable promptness;
(3) the personal responsibility of the defaulting party;
(4) the prejudice to the non-defaulting party;
(5) the defaulting party's history of dilatory action; and
(6) the availability of sanctions less drastic.

*Cincinnati Ins. Co., Inc. v. NVR, Inc.*, No. 3:12-CV-706, 2012 WL 6728244, at *1 (W.D.N.C. Dec. 28, 2012) (citing *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006)).[3]

Of the six factors, this Court has stated that a meritorious defense and reasonable promptness are given the most weight. *See Agdata, LP v. Gupta*, No. 3:08-CV-419, 2008 WL 4811674, at *6 (W.D.N.C. Oct. 31, 2008); *see also Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense"). Since every pertinent factor weighs in favor of DoALL, this Court should set aside its default.

---

[3] Copies of all unpublished decisions cited herein are attached as Exhibit 2.

## I.     DOALL HAS MERITORIOUS DEFENSES TO PLAINTIFF'S CLAIMS.

Since DoALL has meritorious defenses to Plaintiff's claims, the default against it should be set aside. As this Court has previously stated, "all that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *Cincinnati Ins. Co.,* 2012 WL 6728244 at *2 (quoting *U.S. v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)). While a "general denial of the claims is insufficient to overturn a default," little more is required. *See Hill v. Belk Stores Services, Inc.*, No. 3:06-CV-398, 2007 WL 1200093, at *2 (W.D.N.C. Apr. 19, 2007) (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320-21 (2d Cir. 1986)). Indeed, "the standard to show a meritorious defense is not high, merely requiring some possibility of result in favor of defendant at trial." *E.E.O.C. v. Fire Mountain Restaurants, LLC*, No. 1:11-CV-275, 2012 WL 1432450, at*3 (W.D.N.C. Apr. 25, 2012) (summarizing *Adams v. Object Innovation, Inc.*, No. 3:11-CV-272–REP–DWD, 2011 WL 7042224, at *9 (E.D.Va. 2011)).

In the case at bar, DoALL has numerous meritorious defenses to Plaintiff's multitude of claims. First, DoALL terminated Plaintiff for Cause pursuant to the employment agreement between Plaintiff and DoALL dated May 4, 2015 and attached as Exhibit A to Plaintiff's Complaint. Section 2(a) of the agreement required Plaintiff to "use his best efforts to perform [Business Development] services" for DoALL. Section 2(b) required Plaintiff to "comply fully and promptly comply with the various policies, procedures, and rules governing employees promulgated and as amended from time to time by the Company." Plaintiff's work product had steadily declined as evidenced by his loss of customer accounts. Plaintiff was placed on a performance improvement plan and failed to demonstrate any change or improvement in his

performance. Plaintiff cannot hardly argue that failure to do the job for which he was hired does not constitute a material breach of the contract as contemplated in Section 5(b). As such, Defendant was warranted in terminating Plaintiff's employment and all salary, bonus, and other benefits set forth therein. While Plaintiff, unsurprisingly, may think otherwise, DoALL's position is not only reasonable, but is fully within its rights as Plaintiff's employer and ultimate judge of his performance.

Second, DoALL has articulated a legitimate non-retaliatory reason for the its action. Under the prevailing law, Plaintiff has the burden of proof to prove that DoALL's reason is a pretext for retaliation under both the FMLA and ERISA. The mere proximity of time from the adverse action to the protected activity alone, even coupled with Mr. Baucom's personal belief, however erroneous, is insufficient to establish that DoALL intentionally retaliated against Plaintiff.

Third, because DoALL can plausibly prove that it properly terminated the Employment Agreement for Cause, Plaintiff is not entitled to a declaratory judgment regarding his compliance with the obligations of the non-compete non-solicitation provisions contained therein the Employment Agreement.

In *Fire Mountain Restaurants*, the Asheville Division of the Western District of North Carolina held that an employer's proffer of "legitimate, nondiscriminatory business reasons for its actions" were meritorious defenses to the plaintiff's discrimination claim. 2012 WL 1432450, at *3. Given the low standard for establishing a meritorious defense, the court held that the defendant employer had a meritorious defense.

Just as the defendant in *Fire Mountain Restaurants*, DoALL has proffered legitimate business reasons—deteriorating work product and loss of client contacts—for Plaintiff's

termination of employment for cause and its subsequent termination of the Employment Agreement. Consequently, DoALL is entitled to put on its evidence to defend its claims. Thus, DoALL has demonstrated that it has meritorious defenses to all of Plaintiff's claims and should be allowed to defend this case on the merits.

**II.  DOALL ACTED WITH REASONABLE PROMPTNESS IN RESPONDING TO THE ENTRY OF DEFAULT.**

As this Court has previously noted, its task is to discern "whether defendant acted with reasonable promptness *in moving to set aside the entry of default*." *Cincinnati Ins. Co.*, 2012 WL 6728244 at *2 (emphasis added). Even where a party was found to be responsible for causing the delay in responding to the Complaint, this Court has still granted a delaying party's Motion to Set Aside Entry of Default where the delaying party acted with reasonable promptness. Reasonable promptness "is evaluated 'in light of the facts and circumstances of each occasion.'" *L&M Companies, Inc. v. Biggers III Produce, Inc.*, No. 3:08-CV-309–RJC–DCK, 2010 WL 1439411, at *7 (W.D.N.C. Apr. 9, 2010) (quoting *Moradi*, 673 F.2d at 727 (4th Cir. 1982)). The Court has found instances of delays in moving to set aside the entry of default of as much as three months to be reasonably prompt. *See, e.g., Bell v. Disner*, No. 3:14-CV-91, 2014 WL 7205529, at *1 (W.D.N.C. Dec. 17, 2014) (finding that a defaulting party who waited three full months before filing a substantive document acted without reasonable promptness); L&M Companies Inc., No. 3:08-CV-309–RJC–DCK, 2010 WL 1439411, at *7 (noting defendant's delay of two months in responding to an entry of default); *Buttar v. November*, No. 3:07-CV-216-C, 2011 WL 2375492, at *2 (W.D.N.C. June 9, 2011) (analyzing "Promptness in Moving to Set Aside Default").  While the court occasionally examines the date on which the defaulting party was served with the Complaint, this examination seems to be reserved for particularly flagrant delays.

6

In the instant case, DoALL also acted in a more than reasonably prompt manner to move to set aside the Entry of Default, including by obtaining counsel as quickly as possible. Just as the *Hughes* defendant, DoALL filed its Motion to Set Aside the Entry of Default within 12 days of entry, well short of those instances of a delay of a month or longer that were also found to be reasonably prompt. Given the swiftness with which DoALL moved, this favor weighs heavily in DoALL's favor.

### III. DOALL LACKS PERSONAL RESPONSIBILITY FOR THE DEFAULT.

DoALL's delay in responding to the Complaint is due in significant part to the substantial corporate upheaval and confusion within the legal department described above. As a result of the significant cutbacks in personnel, nearly all staff at DoALL have been handling new, unfamiliar, and time-consuming tasks previously handled by others no longer employed by the company. For example, Mr. Thomson is now, in addition to his legal role, in charge of managing and hiring company operators located in a call center nearly 300 miles from DoALL's corporate headquarters. These administrative burdens that resulted in confusion between Mr. Moran and Mr. Thomson were compounded by the personal, family and health matters to which both Mr. Moran and Mr. Thomson had to tend.

The Western District of North Carolina has held that where a defendant company relies on its in-house counsel to handle a case, any negligent delay of that in-house counsel "should not be attributed to the [d]efendant." *Fire Mountain Restaurants*, 2012 WL 1432450, at *5. When given the opportunity to impute in-house counsel's negligence on the defendant in *Fire Mountain Restaurants*, this Court explicitly declined to do so. *Id*. This Court ultimately concluded that "it is clear that counsel's failure should not be attributed to the [d]efendant." *Id*. In *Hughes v. Hewlett Packard Company*, this Court similarly declined to impute an in-house

7

PPAB 3756956v1

Case 3:17-cv-00242-MOC-DSC   Document 13   Filed 06/14/17   Page 7 of 11

counsel's negligence onto the defendant. 2008 WL 820298, at *2. In *Hughes*, a company's general in-house counsel and her assistant—both charged with forwarding lawsuit notices to an assigned in-house counsel—properly received the plaintiff's summons and complaint. *Id.* at *1-2. However, neither employee ever forwarded the materials to the assigned counsel because both thought the other would handle the matter. *Id.* at 2. As a result, the assigned attorney did not file a timely answer, and default was entered against the defendant. *Id*. This Court ruled that the internal miscommunications of the in-house counsels did not prevent defendant from arguing its case on the merits, and it set aside the default. *See id*.

In the instant case, there was confusion as to whether Mr. Thomson or Mr. Moran was charged with securing outside counsel, similar to the confusion that occurred between the defendant's in-house counsel the *Hughes*. In accordance with its ruling in *Fire Mountain Restaurants*, this Court should not impute the delay of DoALL's counsel onto the defendant. Since DoALL's default was caused by its in-house counsel's delay, DoALL lacks responsibility for its default. Accordingly, this factor also weighs in DoALL's favor.

## IV. PLAINTIFF WILL SUFFER NO PREJUDICE IF THIS COURT SETS ASIDE THE DEFAULT.

The Western District of North Carolina has specified four circumstances where a party's delay will prejudice the non-defaulting party. *Fire Mountain Restaurants*, 2012 WL 1432450 at *6 (quoting *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D.Va. 2009)). A delay will prejudice the non-defaulting party if it:

(1) makes it impossible for the non-defaulting party to present some of its evidence;
(2) makes it more difficult for the non-defaulting party to proceed with trial;
(3) hampers the non-defaulting party's ability to complete discovery;
(4) was used by the defaulting party to collude or commit fraud.

*Id*.

"The first two factors are given the most weight, and delay and inconvenience alone are insufficient to cause prejudice." *Id*. Moreover, the prejudice to plaintiff must be "beyond that suffered by any party which loses a quick victory." *See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988).

The parties are at the virtual starting line in this case, a mere 37 days from the date the Complaint was served. The time for discovery would not have commenced. At most the parties might have held their Initial Attorneys Conference by this time if DoALL had actually filed an Answer, and that is assuming the parties had not agreed to an extension of time to respond as many parties have occasion to do. Plaintiff has not lost any access to evidence and bears no difficulty in proceeding with trial. Moreover, Plaintiff's ability to complete discovery has not been hampered, and DoALL has not used its default to collude or commit fraud. Thus, Plaintiff has suffered no prejudice from DoALL's default, and this factor also weighs in DoALL's favor.

## V. DOALL LACKS ANY HISTORY OF DILATORY ACTION.

This Court has held that the where the only dilatory action concerns the default itself, there is no history of dilatory conduct. *See Fire Mountain Restaurants*, 2012 WL 1432450 at *6. (citing *Solis v. Hickman*, No. 1:11-CV-379, 2012 WL 263461 (M.D.N.C. Jan. 30, 2012)). Since DoALL has committed no dilatory action outside the present default, it lacks any history of dilatory action. Thus, this factor also weights in DoALL's favor.

## VI. LESS DRASTIC SANCTIONS AGAINST DOALL ARE AVAILABLE.

This Court has previously held that an appropriate sanction for the defaulting party or its counsel is reimbursement of "reasonable attorney's fees incurred in the filing of the entry of default and in defending the [motion to set aside]." *Rankin v. Advanced Employment Services, Inc.*, No. 3:08-CV-586, 2009 WL 2426315, at *3 (W.D.N.C. Aug. 5, 2009). To the extent the

Court feels inclined to issue any sanctions at all against DoALL, an award of Plaintiff's reasonable attorneys fees arising solely from Plaintiff's cost in defending DoALL's Motion to Set Aside the Entry of Default is an available sanction and, while it is certainly not necessary, it is an example of a sanction that would be far more appropriate than awarding the full value of damages sought by Plaintiff. Since this less drastic sanction is available, this factor also weighs heavily in DoALL's favor.

## CONCLUSION

In sum, all six factors employed by this Court in evaluating whether to grant a party's Motion to Set Aside Entry of Default weigh squarely in DoALL's favor. Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure and the Court's attempt to regularly resolve cases on the merits, DoALL respectfully requests the Court grant is Motion to Set Aside Entry of Default and allow the case to be decided on its merits.

s/Shalanna L. Pirtle
Shalanna L. Pirtle, N.C. Bar No. 36996
**PARKER POE ADAMS & BERNSTEIN LLP**
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 335-6628
Facsimile: (704) 335-4486
E-mail: shalannapirtle@parkerpoe.com

*Attorneys for Defendant DoALL Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing *"Defendant's Memorandum in Support of its Motion to Set Aside Entry of Default"* was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to counsel of record registered to participate in the Court's electronic case filing system, as follows:

> Charles H. Rabon , Jr.
> David Glen Guidry
> Gregory Donald Whitaker
> RABON LAW FIRM, PLLC
> 225 E. Worthington Avenue, Suite 100
> Charlotte, NC 28203
> Email: crabon@usfraudattorneys.com
> Email: dguidry@usfraudattorneys.com
> Email: gwhitaker@usfraudattorneys.com
>
> *Attorneys for Plaintiff*

This the 14th day of June, 2017.

> s/Shalanna L. Pirtle
> Shalanna L. Pirtle, N.C. Bar No. 36996
> **PARKER POE ADAMS & BERNSTEIN LLP**
> Three Wells Fargo Center
> 401 S. Tryon Street, Suite 3000
> Charlotte, North Carolina 28202
> Email: shalannapirtle@parkerpoe.com
>
> *Attorneys for Defendant DoALL Company*